UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Reshawn Armstrong, *pro se*<br>          Plaintiff,<br>vs.<br><br>Pamela Bondi, *U.S. Attorney General, Head of Department of Justice;*<br>**Department of Justice, Agency;**<br>William K. Marshall III, *Director of Federal Bureau of Prisons/ Head of the Federal Bureau of Prisons;*<br>Federal Bureau of Prisons, *Agency;*<br>Chad Garrett, Warden *(in his individual capacity and official capacity - acting under color of federal law;*<br>Kimberly Neely, Warden *(in her individual capacity and official capacity - acting under color of federal law);*<br>Crystal Woods, Human Resource Manager *(in her individual capacity and official capacity - acting under color of federal law);*<br>Ora Mosby, Captain *(in her individual capacity and official capacity - acting under color of federal law);*<br>Ernest Sellers, Lieutenant *(in his individual capacity and official capacity - acting under color of federal law);*<br>Bradley Love, Lieutenant *(in his individual capacity and official capacity - acting under color of federal law);*<br>Christopher Boyd, Lieutenant *(in his individual capacity and official capacity - acting under color of federal law);*<br>Cynthia Jones, Lieutenant *(in her individual capacity and official capacity - acting under color of federal law);*<br>Cleon Bates, Senior Officer Specialist - Local Union President *(in his individual capacity and official capacity - acting under color of federal law);*<br>                    Defendants,<br>Merit System Protection Board<br>          Respondent. | Case: 1:25−cv−02480<br>Assigned To : Friedrich, Dabney L.<br>Assign. Date : 7/29/2025<br>Case No. Description: Employ. Discrim. (H−DECK)<br><br>Filed Date: July 29, 2025 |

RECEIVED
JUL 29 2025
Clerk, U.S. District & Bankruptcy Court for the District of Columbia

# COMPLAINT

## I. Introduction

01. The Plaintiff Reshawn Armstrong, pro se, files this mixed case civil action against the above mentioned Defendants/Respondent regarding a mixed case surrounding unlawful events of a wrongful termination under Chapter 75 so to promote the efficiency of service.

02. The Plaintiff states the adverse action (removal) was not warranted and based on prohibited personnel practices and pretext for discrimination and retaliation; which was conspired by Agency officials through false statements made in affidavits, including an affidavit that was not even signed by person authorized to administer the oath (section was left blank), falsification of government records, ex parte communication, and violation of plaintiffs constitutional rights so to create an illusion of misconduct; which is what the Agency used to have Plaintiff wrongfully removed from federal employment.

03. The Plaintiff also seeks judicial review of the Merit Systems Protection Board (MSPB) final decision, challenging the Board's legal interpretation, factual findings, and procedural correctness.

04. Finally, Plaintiff brings a bivens action against individual federal employees, for constitutional violations under the First and Fifth amendments of the U.S. Constitution, including false statements made under oath, falsification of government records, an ex parte communications that resulted in Plaintiff wrongful termination.

## II. Parties

05. Plaintiff: Reshawn Armstrong (pro se), former employee of the Department of Justice-Federal Bureau of Prisons is a citizen of the United States who resides in the state of Florida.

06. Defendant: Pamela Bondi, is the U.S. Attorney General, Head of the Department of Justice, primary business is Head of Department of Justice, Headquarters located in Washington, District of Columbia.

07. Defendant: Department of Justice, is an federal agency of the United States Government, Headquarters located in Washington, District of Columbia.

08. Defendant: William K. Marshall III, is the Director of Federal Bureau of Prisons/ primary business is Head of the Federal Bureau of Prisons, Headquarters located in Washington, District of Columbia.

09. Defendant: Federal Bureau of Prisons, is an federal agency within the Department of Justice, Headquarters located in Washington, District of Columbia

10. Defendant: Chad Garrett, is an employee of the Department of Justice- Federal Bureau of prisons, and resides in the state of Arkansas.

11. Defendant: Kimberly Neely, is an employee of the Department of Justice-Federal Bureau of prisons, and resides in the state of Alabama.

12. Defendant: Crystal Woods, is an employee of the Department of Justice-Federal Bureau of prisons, and resides in the state of Georgia.

13. Defendant: Ora Mosby, is an employee of the Department of Justice- Federal Bureau of prisons, and resides in the state of Alabama

14. Defendant: Ernest Sellers, is an employee of the Department of Justice-Federal Bureau of prisons, and resides in the state of Alabama

15. Defendant: Bradley Love, is an employee of the Department of Justice-Federal Bureau of prisons, and resides in the state of Arkansas

16. Defendant: Christopher Boyd, is an employee of the Department of Justice-Federal Bureau of prisons, and resides in the state of Texas

17. Defendant: Cynthia Jones, is an employee of the Department of Justice Federal Bureau of prisons, and resides in the state of Texas

18. Defendant: Cleon Bates, is an employee of the Department of Justice Federal Bureau of prisons, and resides in the state of Alabama.

19. Respondent: Merit Systems Protection Board, is an independent, quasi- judicial agency within the Executive Branch of the U.S. government, Headquarters located in Washington, District of Columbia.

## III. Jurisdiction and Venue

20. This Court has subject matter jurisdiction pursuant to *28 U.S.C. 1331 (federal*

*question)and 1343 (civil rights)* for claims "arising under" the U.S. Constitution, federal laws or treaties, among other provisions - Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., Rehabilitation Act of 1973, as amended, 29 U.S.C. 701 et seq. ADA Amendments Act of 2008 (ADAAA), First Amendment (Freedom of Speech of Public Policy and/or Public Concern), Fifth Amendment (Due Process Clause and Property Interest in Employment), Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 42 U.S.C. 1985, Conspiracy to Terminate, Deprivation of Rights Acting Under Color of Federal Law/Authority, Stigma-Plus Doctrine, False Light Doctrine *5 U.S.C 702, 5 U.S.C. 706 Administrative Procedure Act, 5 U.S.C. 7702, 5 U.S.C. 7703(b)(2), 5 U.S.C. 7703(c), (Judicial Review)*, 5 U.S.C. 1201 et seq., 5 USC 2302 et seq., Follow the Rules Act, 5 USC 6301 et seq., 5 U.S.C. 7511 et seq.

21. This Court has subject matter jurisdiction pursuant to *28 U.S.C. 1332 (diversity of citizenship)* as well; because Plaintiff is a resident of Florida and the Defendants/Respondent are not. Also principal place of business is in Washington, DC, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

22. This Court also has personal jurisdiction pursuant to *28 U.S.C. 1391* with venue being proper in this Court because the Defendants are Federal agencies and Federal employees of the United States acting in their official capacity and/or under color of federal law/authority.

23. Additionally this Court has supplemental jurisdiction pursuant *28 U.S.C. 1367* Alabama Code 6-5-180, Alabama Code 6-5-182, False Light (invasion of privacy) actual malice or reckless disregard, and civil conspiracy to making false statements to harm plaintiff reputation, and also civil conspiracy to have plaintiff wrongfully terminated-removed from her position.

## IV. Exhaustion of Federal Administrative Remedies

24. The Plaintiff has exhausted her administrative remedies through an appeal with the Merit System Protection Board (MSPB) filed on July 27, 2023 after effective date of removal (July 19, 2023); MSPB rendered its final decision on March 18, 2025; Plaintiff then filed a petition for review with the Equal Employment Opportunity Commission (EEOC) on April 15, 2025.

25. The EEOC rendered it decision and notice of rights on July 3, 2025, yet the Plaintiff did not become aware of EEOC decision/notice until July 5th, 2025; which informed Plaintiff she had 30 days from date she became aware of notice of rights to file civil action.

## V. **Plaintiff's Employment and Disability**:

26. The Plaintiff was employed with the Department of Justice-Federal Bureau of Prisons (Agency and/or Agency officials) from January 21, 2007 to July 19, 2023. Plaintiff job title was Senior Officer Specialist at the time of wrongful termination.

27. The Plaintiff has a chronic medical condition, Crohn's disease, which is classified as a disability within the meaning of the Rehabilitation Act of 1973 and Americans with Disabilities Act Amendments Act of 2008 (ADAAA), having a physical or mental impairment that substantially limits one or more major life activities.

28. The Plaintiff is a qualified individual who can perform the essential functions of her job duties with or without reasonable accommodation.

29. During Plaintiff's employment with the Agency, Plaintiff has always maintained above average performance evaluations (excellent and outstanding) regarding her job duties and responsibilities, which only proves plaintiff can perform the essential functions of her job so to carry out the mission of the Agency successfully.

30. In 2018, Plaintiff had to have emergency surgery regarding her chronic medical condition and was off work for almost three months on sick leave. Prior to Plaintiff's emergency surgery Plaintiff was dealing with a hostile work environment which started in 2015 and has been nonstop up to the Plaintiff wrongful termination in 2023.

31. In or around 2019, Plaintiff's health provider provided Agency's officials with a medical note which stated, Plaintiff was not to work beyond 8 hours in a day/40 hours in a week due to hostile work environment; which was affecting Plaintiff's health.

32. Plaintiff's health provider was concerned of the constant unhealthy stress his patient was under and feared Plaintiff would eventually have to have more surgeries; due to severe-prolong stress can trigger or exacerbate symptoms of Crohn's disease, leading to flare-ups and increase inflammation in gastrointestinal tract.

33. Plaintiff's health provider repeated his medical orders/concerns through Plaintiff's Family Medical Leave Act (FMLA) medical certification forms, under section additional information for agency to know, in hopes of getting Plaintiff's medical condition under control and back in remission.

34. Plaintiff's disability required specific medical care and treatment, which Plaintiff's health provider issued orders, recommendations, and the need for reasonable accommodation in the form of modified work schedule, regarding Plaintiff's disability, which was essential for managing Plaintiff's Crohn's disease.

35. Plaintiff was continuously being subject to a hostile work environment, such as but not limited to; being denied immediate access to restrooms, would have to wait over 10 minutes to be relieved from posts to use restroom, perimeter government vehicles assigned to Plaintiff's post were being mechanically tampered with and trashed to point vehicles became roach infested, forced to work beyond 8 hours by not being relieved from post on time, the use of sick leave (without consent) when Plaintiff invoked unpaid FMLA, and being listed as AWOL when Agency officials had no more sick leave to take without permission.

36. Between 2019 and 2021, Plaintiff had filed numerous complaints regarding her work conditions at FCI Aliceville, through emails sent to Management and Regional Office in regards to misconduct, again with the EEOC and DOJ-OIG, to include MSPB, OPM, Fair Labor Relations Authority (FLRA), Office of Special Counsel (OSC), Occupational Safety and Health Administration (OSHA) and multiple civil actions, yet Plaintiff's complaints were ignored and/or not handled properly.

37. The Plaintiff even filed a complaint with the National Archives and Records Administration (NARA) in or around 2021, to report unauthorized destruction of government records, specifically pages that had been ripped out from an government bound logbook (requested by Plaintiff during discovery stage of one of her previous lawsuits); which NARA never provided any explanation for missing pages.

## VI. Agency Response and Retaliation

38. Despite knowing or having reason to know of the hostile work environment, Agency's officials failed to take prompt and appropriate corrective action to stop the harassment and prevent its recurrence.

39. Agency's officials refused to provide requested reasonable accommodation or an equally effective alternative.

40. The agency failed to engage in a good faith interactive process to explore reasonable accommodation for Plaintiff's disability and the need for Plaintiff to follow doctor's orders.

Case 1:25-cv-02480-DLF   Document 1   Filed 07/29/25   Page 8 of 20

41. Agency's officials were aware of Plaintiff protected activities, including health provider communication about Plaintiff's disability and doctoral orders, and Plaintiff's need for modified work scheduled due to hostile work environment was exacerbating Plaintiff's medical condition.

42. Subsequent to Plaintiff's protected activities, as retaliation for Plaintiff adhering to doctor's order, requesting reasonable accommodation, and opposing an unlawful employment practice which would have jeopardize Plaintiff's health. Agency's officials placed Plaintiff under a baseless internal investigation for "Failure to Obey Supervisor Order-Refusal of Mandates"

43. The investigation was unwarranted and discriminatory and was intended to punish plaintiff for asserting her rights under the rehabilitation act of 1973 and Title VII Opposition Clause.

44. Agency officials charged plaintiff with another baseless offense in 2023, "Failure to Cooperate During an Official Investigation" which was a pretext for disability discrimination and retaliation.

45. As a result of these baseless charges, plaintiff was wrongfully terminated from federal employment with the Agency on July 19 2023.

46. A casual connection exists between plaintiff's protected activities and the adverse employment action taken by the Defendants. The adverse action would have not occurred but for plaintiff's adherence to her doctor's orders and the need for reasonable accommodation.

## VII. Bivens Action - Conspiracy and Constitutional Violations

47. In April of 2021 (alleged dates), the Plaintiff supervisor, Lieutenant Earnest Sellers, (Lieut. Sellers) informed Plaintiff she was next on the mandate list to work non-voluntary overtime, which directly conflicted with Plaintiff's doctor's orders and posed a significant risk to Plaintiff's health and safety.

48. Plaintiff informed Lieut. Sellers that her health provider did not want her to work more than 8 hours in a day and that Captain Ora Mosby (Capt. Mosby) was aware of requested accommodation.

49. In July of 2021, Lieutenant Bradley Love (Lieut. Love) informed Plaintiff she was under an internal investigation, initiated by Warden Chad Garrett (Warden Garrett) for offense "Failure to Obey Supervisor Orders - Refusal of Mandates" and that interview for her affidavit would be conducted on August 4, 2021.

Page 8 of 20

50. The Agency operate its internal investigations under the Weingarten rights.

51. The Plaintiff informed Local Union President, Cleon Bates (Mr. Bates), she wanted Senior Officer Specilaist Kyle Wilson (Officer Wilson) a fellow co-worker who is a union member, as her representative during interview with management on August 4, 2021.

52. On August 4, 2021 plaintiff, was relieved from post to conduct interview with Lieut. Love and was denied the representative of her choice to be present with her during the interview.

53. Instead, Mr. Bates was in Lieut. Love's office along with Lieutenant Cynthia Jones (Lieut. Jones), which all three were among the list of staff members Plaintiff had previously complained about as harassers of her disability.

54. The Plaintiff asked Mr. Bates why Officer Wilson was not present, in which Mr. Bates stated he would represent Plaintiff during interview with Management. Plaintiff informed Mr. Bates she did not trusts him and did not want him as a representative but instead Officer Wilson, which Mr. Bates denied.

55. In essence, the Plaintiff was alone in a room with three known harassers that she had previously complained about regarding her disability; to conduct an interview which could possibly lead to disciplinary action.

56. During the interview, Plaintiff (affiant) answered all questions asked of her by Lieut. Love (Interviewer), yet when the affidavit was presented to Plaintiff for review, Plaintiff noticed that not all relevant responses to questions were included, such as her FMLA statements regarding her medical condition.

57. More specifically, Plaintiff stated during interview that she did not refuse mandates by Lieut Sellers in April of 2021, but instead informed Lieut. Sellers her health provider did not want her working more than 8 hours in a day, and that Capt. Mosby was aware of this; which Lieut Sellers stated "10-4".

58. Lieut. Love refused to include this stated response to question by Plaintiff in plaintiff's affidavit, and instead told Plaintiff information was irrelevant and that plaintiff was going around in circles and demanded Plaintiff to sign affidavit.

59. Mr. Bates said nothing nor did anything when Plaintiff stated that her responses to questions were not being recorded accurately, and that relevant information was being left out of affidavit; and that Lieut. Love was using intimidation to coerce Plaintiff to sign affidavit she did not agree with.

60. Lieut. Love asked Plaintiff if she had any documentation which stated she was not to work more than 8 hours in a day which Plaintiff stated yes, that she had sent a copy of her medical certification form to Warden Garrett and Human Resource Department (HRD).

61. Lieut. Love then allowed Plaintiff to leave interview to obtain copy of her medical certification form from HRD, which Mr. Bates followed Plaintiff from office to front lobby where Plaintiff called HRD, and after went to HRD to obtained copy of medical certification from Human Resource Manager Crystal Woods (HRM Woods).

62. Plaintiff returned back to interview with document, yet Mr. Bates did not return; Plaintiff then gave copy of medical certification form to Lieut. Love as requested.

63. Lieut. Love still refused to put this information in affidavit, and again tried to intimidate and coerce Plaintiff into signing an affidavit not in her own words, which Plaintiff stood her ground and refused to sign an affidavit she did not agree with.

64. Lieut. Love then stopped the interview and stated "we'll try this tomorrow."

65. The next day, August 5, 2021, Plaintiff was again relieved from post to conduct interview with Lieut. Love. When Plaintiff arrived to Lieut. Love's office, Lieutenant Christopher Boyd (Lieut. Boyd) was with him instead of Lieut. Jones; which Lieut. Boyd was also amongst the list of staff members Plaintiff reported as being a harasser of her disability.

66. Once again, in essence, the Plaintiff was left alone in a room with known harassers that she had previously complained about regarding her disability; to conduct an interview which could possibly lead to disciplinary action.

67. The interview consisted of Lieut. Love printing out the same exact affidavit from August 4, 2021 with no changing made, and again using intimidation to have Plaintiff sign affidavit by repeatedly tapping his finger by the affiant signature section while at the same time demanding (in an aggressive tone) that the Plaintiff sign affidavit, which again Plaintiff refused to sign an affidavit she did not agree with.

68. Lieut. Love ended the interview and stated "we're done" and gave Plaintiff a direct order to leave his office, which Plaintiff complied.

69. The Plaintiff went to the Human Resource Department to report staff misconduct to HRM Woods and informed she was being denied the opportunity to complete an

affidavit in her own words, and that Lieut. Love tried to coerce her to sign an affidavit with only information he felt was relevant to case; which HRM Woods stated she could not get involve since she recommends the penalties after the completion of investigations.

70. Plaintiff then asked HRM Woods if she could submit a memo through her to Warden Garrett (whom initiated the local investgation), to inform she was being coerce by Lieut. Love to sign an affidavit that was not in her own words; which HRM Woods stated yes and sent memo via email to Warden Garret which he acknowledged as received.

71. Plaintiff also requested a meeting with Warden Garrett to verbally explained what had happen during the interviews and to again report an on-going hostile work environment.

72. During meeting, instead of Warden Garrett taking Plaintiff report of misconduct seriously, he instead further harassed Plaintiff by calling her names, such as cocky and arrogant, while in the presence of HRM Woods, and further retaliated by instructing HRM Woods to again have Plaintiff submit clarifying medical records to her health provider (<u>without consent</u> from Plaintiff and at Plaintiff's expense); which HRM Woods provided forms via email to Plaintiff with expected due date.

73. Plaintiff filed another MSPB compliant regarding Agency's frivolous investigation and request for medical records, and that the Agency was not following the rules as required under the "Follow the Rules Act" enacted by Congress in 2017 which MSPB dismissed compliant for lack of jurisdiction.

74. Plaintiff submitted clarifying medical records <u>under protest</u> to HRM Woods by due date.

75. Plaintiff contacted Lieut. Love via email to check status of case since she had not heard anything else on the matter after she submitted clarifying medical records to HRM Woods.

76. Lieut. Love responded to Plaintiff's email on November 21, 2021 and stated Plaintiff had no new charges other than the "failure to obey supervisor orders - refusal of mandates" which was still pending review.

77. It was not until June 5, 2023, when Plaintiff was presented with a proposal letter for removal by HRM Woods, that she became aware for the first time of a completely different charge "Failure to Cooperate During an Official Investigation".

78. By then Warden Garrett was no longer the Warden at FCI Aliceville (transferred in or around November of 2022 to another institution); in which Kimberly Neely took over as Warden at FCI Aliceville.

79. The proposal notice dated June 5, 2023 alleged that plaintiff refused to cooperate during an official investigation regarding a previous alleged charge "Failure to Obey Supervisor Order-Refusal of Mandates" conducted on August 4, 2021 and August 5, 2021; which this is the same investigation Plaintiff had reported misconduct (coercion) by the Interviewer, Lieut. Love, and also involved Plaintiff's protected activities.

80. The proposal notice stated:

    a) Plaintiff improperly sign the "warning and assurance to employee required to provide information form (form-BP-A0194)", when Plaintiff signed and dated outside the designated box area, and also wrote "I asked that meeting rescheduled due to I just found out what case is about",

    b) Plaintiff refused to sign form B,

    c) Plaintiff failed to provide information and answer questions, and

    d) Plaintiff failed to provide document from HR needed to answer any questions.

81. The Plaintiff responded to proposal notice both in writing and verbally to Warden Neely, who was the deciding official, and explain that affidavits submitted as evidence in support of her removal was not true.

82. The Plaintiff had informed Warden Neely the Agency's officials who submitted affidavits in support of the proposal notice were known harassers of her disability which Plaintiff has previously complained about, and that she was being setup.

83. On July 19, 2023 (after 16 years and 6 months of service with less than 4 years to full retirement), the Plaintiff was removed from her position and federal service under Chapter 75 so to promote the efficiency of service, effective that day.

84. Lieutenant Earnest Sellers reported Plaintiff as refusing mandates (non- voluntary overtime), knowing Plaintiff's health provider did not want Plaintiff to work beyond 8 hours in a day, due to hostile work environment was exacerbating her chronic medical condition, Crohn's disease.

85. Warden Chad Garrett initiated the baseless investigation "Failure to Obey Supervisor Order-Refusal of Mandates", knowing Plaintiff's health provider had

submitted documentation for Plaintiff not to work beyond 8 hours in a day/40 hours in a week, and the need for a modified work schedule in the form of non-voluntary overtime (mandates), due to hostile work environment was exacerbating her chronic medical condition, Crohn's disease

86. Human Resource Manager Crystal Woods recommended Plaintiff be removed from her position and federal service knowing Plaintiff had repeatedly reported hostile work environment which was ignored, and also that Plaintiff had reported coercion by Lieut. Love during the 2021 investigation; which HRM Woods withheld this relevant information, memorandum, and clarifying medical records submitted to her under protest from the investigative adverse action files concerning Plaintiff alleged charged "Failure to Cooperate During an Official Investigation"

87. Captain Ora Mosby provided an affidavit which stated she gave Plaintiff a direct order to cooperate with the investigation, which was not true.

88. Lieutenant Bradley Love, provided an affidavit (which was not even administer by a person sworn to give the oath) which stated "I made another attempt to complete the Investigation with Armstrong. Armstrong again refused to sign form B and answer any questions about the investigation", which was later proven during the MSPB hearing to be false.

89. Lieutenant Cynthia Jones, provided an affidavit which stated "I witnessed "Armstrong avoid answering making statements not pertaining to the questions", which was later proven during the MSPB hearing to be false.

90. Lieutenant Christopher Boyd, provided an affidavit which stated "I witnessed Armstrong refused to sign Form B" which was later proven during the MSPB hearing to be false.

91. Local Union President Cleon Bates, denied the Plaintiff's choice of representative to be present with her during interview with management, and afterward provided an affidavit which stated Plaintiff "refused to sign Form B", which was later proven during the MSPB hearing to be false.

92. Warden Kimberly Neely did not consider the plaintiff was dealing with a hostile work working environment. Warden Neely also committed exparte communication, and had informed the time and attendance clerk to list plaintiff as AWOL instead of FMLA, which shows Warden Neely has some type of animosity towards the plaintiff.

## VIII. Merit Systems Protection Board (Judicial Review)

93. The court has jurisdiction over this judicial review pursuant *5 U.S.C. 7702, 5 U.S.C. 7703(b)(2)*, because Plaintiff filed an appeal with the Respondent, Merit Systems Protection Board (MSPB), which included claims of prohibited personnel practices in connection with a chapter 75 adverse personnel action which was pretext for discrimination and retaliation. The standard of review for a mixed case is de novo pursuant to 7703(c).

94. The Plaintiff received an alleged charge of "Failure to Cooperates During an Official Investigation" which Plaintiff knew nothing about until she received proposal notice from HRM Woods on June 5, 2023. which recommended Plaintiff be removed from her position and federal services.

95. The charge alleged that Plaintiff refused to cooperate during an official investigation regarding a previous alleged charge "Failure to Obey Supervisor Order-Refusal of Mandates" conducted on August 4, 2021 and August 5, 2021, which is the same investigation the Plaintiff had reported misconduct (coercion) by the Interviewer, Lieut. Love.

96. On July 19, 2023, the Agency removed the Plaintiff from federal employment, under chapter 75 citing "so to promote the efficiency of service". Plaintiff appealed this action with the MSPB, asserting the stated reasons in Agency's proposal notice was not true, that the agency did not include all relevant information in a material files for review, that Plaintiff had been set up by Agency officials, and that the stated reason for plaintiff removal was not to promote the efficiency of service but instead pretext for discrimination and retaliation concerning her disability.

97. The Plaintiff raised affirmative defenses such as violations of the Rehabilitation Act of 1973, Family Medical Leave Act (FMLA), Title VII Rights of 1964 - Retaliation for standing up for her rights and speaking out when her rights has been violated, participation in protected activities, hostile work environment, violation of due process, exparte communication, the length of time from the date of alleged misconduct to removal date was 712 days which is a long time to keep an employee who is hindering the efficiency of service, and the fact Plaintiff's work performances evaluations were above average (excellent and outstanding) before and after the alleged misconduct.

98. It was also stated for the first time during MSPB hearing by Warden Neely, <u>after the Plaintiff removal,</u> that she removed the Plaintiff from her position and federal service because Plaintiff should have not brought her own questions to the interview (allegedly).This is a procedural violation of Plaintiff due process rights and the right to be fully heard.

99. The Plaintiff was never informed that the reason she was removed from federal employment was because Plaintiff allegedly had brought her own questions to an interview. Also Warden Neely was not even the Warden for FCI Aliceville in August of 2021, so who told Warden Neely this false information? This ex parte communication with the deciding official, which is also a violation of Plaintiff due process rights.

100. Warden Neely was also <u>required</u> to considered all relevant Douglas Factors, which there are 12 factors when determining whether or whether not to impose discipline, and if so what the appropriate penalty should be.

101. Warden Neely addressed all Douglas Factors in her final decision letter, except for number 11, which deals with mitigating circumstances surrounding the offense, such as unusual job tension, harassment, etc.

102. The Agency also refused to produce relevant discovery material (perimeter logbook ) due to Plaintiff belief the incident with Lieut. Sellers happen in 2020 not 2021, which Plaintiff could have proven because she documented incident in logbook.

103. Plaintiff was denied the opportunity to review original form "warning and assurance to employee required to provide information form (form-BP-A0194)", due to Plaintiff did not write "I asked that meeting rescheduled due to I just found out what case is about" on August 4, 2021 as it was allege in proposal notice and wanted to see the original form opposed to a copy which can be manipulated (for example copy and past information from a 2012 investigation into a 2021 investigation).

### IX. Administrative Procedure Act (Judicial Review of FMLA Claims)

104. The court has jurisdiction over this judicial review pursuant. *5 U.S.C 702, 5 U.S. C. 706,)*, because Plaintiff filed an appeal with the Respondent, Merit Systems Protection Board (MSPB), which had alleged discrimination of her Family Medical Leave Act entitlement as affirmative defense which was denied by the MSPB.

105. The Plaintiff states MSPB was wrong for not considering her FMLA claims, due to the fact the Plaintiff at the time of employment, was considered a Title II federal employee with FM LA entitlements but with no right to sue. A Title II federal employee only recourse for violations of their FMLA entitlements is through the administrative process before a independent federal judicial agency, such as MSPB. The plaintiffs affirmative defenses regarding violation of FMLA rights should have been considered, especially when the Agency admitted as true that an employee is

entitled to a modified work schedule/reduce hours and that FMLA law does allow for an employee to use FMLA leave towards non-voluntary overtime (mandates).

## X. Wrongful Termination (Disability Discrimination)

106. The plaintiff reasserts paragraphs 1 through 103.

## XI. Cause of Action

A. Count one: disability discrimination (Failure to Accommodate)

107. The Plaintiff brings this action under *29 U.S.C 791 and 29 U.S.C. 794* against the Defendants stated in paragraphs 6 through 9.

108. The rehabilitation act of 1973, section 501 and 504: prohibits discrimination on the basis of disability and retaliation against individuals who exercise their rights under the Act.

109. The employer failure to provide a reasonable accommodation for plaintiff's disability violated this Act.

110. The request for reasonable accommodation in the form of modified work schedule, so not to work overtime which would have jeopardized Plaintiff's health constituted a protected activity under the rehabilitation act of 1973 and also the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

111. This reasonable accommodation would have not cause Agency undue hardship.

112. Agency's officials refused to provide requested reasonable accommodation or an equally effective alternative.

113. Agency's action constitutes a failure to provide reasonable accommodation and discrimination based on plaintiff's disability which ultimately lead to Plaintiff wrongful termination.

B. Count two: retaliation (rehabilitation act and title VII)

114. The Plaintiff brings this action under *29 U.S.C 791, 29 U.S.C. 794, Title VII of the Civil Rights Act of 1964, as amended*, and *42 U.S.C. 2000e et seq.* against the Defendants stated in paragraphs 6 through 9.

115. The rehabilitation act of 1973, section 501 and 504 prohibits retaliation against individual who exercise their rights under the Act, including requesting reasonable

accommodations and adhering to the doctors order so not to jeopardize their health due to hostile work environment.

116. Title VII of the civil rights act of 1964, prohibits employers from retaliating against employees for opposing an unlawful employment practice under title VII opposition clause, which Plaintiff opposition to the employer's requirement of overtime that negatively impacted her health and exacerbated her Crohn's disease falls under this protection.

117. The Plaintiff engaged in protected activities under the Rehabilitation Act of 1973 and Title VII Opposition Clause.

118. The Defendants were aware of Plaintiff protected activities.

119. The Agency retaliated against the Plaintiff for exercising her protected right to refuse overtime based on their doctor's orders and opposing an unlawful employment practice which would have jeopardized Plaintiff's health.

120. The Agency engaged in adverse employment action by placing the Plaintiff under a baseless internal investigation because Plaintiff engaged in protected activities.

121. The adverse employment action was taken in retaliation for Plaintiff's protected activities and for exercising her rights under Rehabilitation Act of 1973, and for opposing an unlawful employment practice under title vii opposition clause.

122. The agency stated reason for plaintiff's termination was a pretext for discrimination and retaliation.

**C. Count Three: Harassment (Disability Discrimination)**

123. The Plaintiff brings this action under *29 U.S.C 791 and 29 U.S.C. 794* against the Defendants stated in paragraphs 6 through 9.

124. The rehabilitation act of 1973, section 501 and 504 prohibits harassment that create a hostile work environment against an individual with a disability.

125. The harassment was so severe and persuasive that it altered the terms and conditions of employment which created an hostile work environment for the Plaintiff.

126. The Defendant knew or should have known of the harassment but fail to take prompt and effective remedial action.

**D. Count three: judicial review of MSPB be final decision**

127. This court has jurisdiction over this judicial review pursuant *5 U.S.C. 7702, 5 U.S.C. 7703(b)(2), 5 U.S.C. 7703(c)*, arising under *5 U.S.C. 1201, et seq., 5 USC 2302 et seq., 5 USC 6301 et seq., 5 U.S.C. 7511 et seq.*; because plaintiff's appeal filed to the Respondent, Merit System Protection Board included claims of discrimination under [state the Pacific and the discrimination law such as title VII of the civil rights act of 1964, etc.], in connection with a chapter 75 adverse personnel action.

128. The Plaintiff seeks judicial review of the respondent, Merit Systems Protection Board final decision dated March 18, 2025, which sustained Agency's removal of the Plaintiff under Chapter 75, so to promote the efficiency of service

129. Plaintiff contends that the MSPB decision should be reversed because it is based on:
    Legal errors and interpreting applicable civil service laws, rules, or regulations
    Factual findings that are not supported by substantial evidence
    Procedural errors that violated plaintiffs due process rights

130. MSPB failed to properly consider plaintiff claims of discrimination and retaliation.

131. MSPB also failed to properly consider the evidences presented by the Plaintiff during the appeal process, leading to a decision that was arbitrary, capricious, and unsupported by evidence.

132. Under Chapter 75, an employee can be removed <u>only for such cause as will promote the efficiency of service.</u>" which the Agency failed to show.

133. The MSPB be decision should be reverse.

**E. Count four: Bivens claim-constitutional violations**

134. The Plaintiff brings this action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics against the Defendants stated in paragraphs 10 through 18 for First Amendment (Freedom of Speech of Public Policy and/or Public Concern), Fifth Amendment (Due Process Clause and Property Interest in Employment), 42 U.S.C. 1985, Conspiracy to Terminate, Deprivation of Rights Acting Under Color of Federal Law/Authority, Stigma-Plus Doctrine, False Light Doctrine.

135. Individual defendants were acting under color of federal law, violated plaintiff's constitutional rights (First Amendment and Fifth Amendment).

136. Individual defendants engaged in a conspiracy to terminate plaintiff employment based on false statements and discriminatory/retaliatory/animus.

137. Individual defendants actions include but are not limited to, making false statements and affidavit, falsifying government records, violating plaintiff procedural due process rights, and engaging in ex parte communication; which were used as evidences in plaintiffs wrongful termination.

138. The first amendment protect a person freedom of speech and to speak freely when laws, regulations, and the U.S. Constitution are violated which are a matter of public concerns. This includes speaking out against wrong doing and filing complaints regarding violations free from retaliation.

139. The fifth amendment protect a person fundamental rights interest in pursuing a livelihood so to earn a honest living in their chosen occupation without interference,

## XI. Prayer for Relief

140. Plaintiff respectfully request that this court grant the following relief:

141. Declare that Agency engaged in disability discrimination and retaliation in violation of the rehabilitation act of 1973 and Title VII;

142. Ordered Agency to reinstate Plaintiff back to former position with all back pay, benefits, and seniority restored,

143. Award Plaintiff pre-judgment and post-judgment interest,

144. Award compensatory and punitive damages for emotional distress, and other damages suffered as a result of the Agency's unlawful action,

145. Award punitive damages for emotional distress and reputational harm against each Defendant stated in paragraphs 10 through 18 in the amount of 300,000.00,

146. Order that the respondent, MSPB's final decision be reverse,

147. Award Plaintiff all costs and fees associated with this action, and

148. Grant such other and further relief as court deems just and proper.

## XII. Bench Trial

149. The Plaintiff requests trial by Judge on all issues.

Respectfully Submitted,

Reshawn Armstrong, Pro Se
362 Gulf Breeze Parkway #262
Gulf Breeze, Florida 32561
(205) 861-5979
ra1111@ymail.com